742 P.2d 286

**The STATE of Arizona, Petitioner,**

**v.**

**The SUPERIOR COURT OF THE STATE of ARIZONA; and the Honorable James L. Riley, Judge of the Superior Court, Respondents,**

**and**

**Hubert B. SPEARS, Real Party in Interest.**

**No. 2 CA–SA 87–0012.**

Court of Appeals of Arizona, Division 2, Department A.

March 31, 1987.

Review Denied Sept. 4, 1987.

Alan K. Polley, Cochise Co. Atty. by Patrick M. Elliston, Bisbee, for petitioner.

Elledge and Kelliher, P.C. by John F. Kelliher, Jr., Sierra Vista, for real party in interest.

## OPINION

FERNANDEZ, Judge.

The issues presented by this special action concern the question whether evidence of a defendant's refusal to take field sobriety tests in a trial on a charge of driving under the influence would violate the defendant's Fifth Amendment privilege against self-incrimination. This is a narrow legal question, and one of significant public concern, appropriate for determination by special action. We therefore accept jurisdiction.

Real party in interest Hubert Spears was indicted on one count of driving under the influence of intoxicating liquor while his operator's license was suspended, a class 5 felony, in violation of A.R.S. § 28–692.02. Prior to his first trial, which ended in a mistrial, the trial court granted Spears' motion in limine to preclude admission of any evidence regarding Spears' refusal of an officer's request that he take certain field sobriety tests. At the hearing on the state's motion to set the case for a new trial, the court stated that, if asked to rule again on the motion in limine, it would rule in Spears' favor. The court then stayed the matter pending resolution of this special action.

■ The privilege against self-incrimination accorded to a defendant "is a prohibition of the use of physical or moral compulsion to extort communications from him...." *Holt v. United States*, 218 U.S. 245, 252–253, 31 S.Ct. 2, 6, 54 L.Ed. 1021, 1030 (1910). In order to establish a violation of the privilege, a defendant must show that there was a communication and that it was compelled by the government. Relying on the decision of the Oregon Court of Appeals in *State v. Green*, 68 Or.App. 518, 684 P.2d 575 (1984), overruled on other grounds, *State v. Panichello*, 71 Or.App. 519, 692 P.2d 720 (1984), Spears contends that the privilege was violated here both because the refusal to take the field sobriety tests was a communication and because it was compelled by the officer's request. He further contends that he was privileged to refuse the tests because they involved a verbal component (e.g., reciting the alphabet and counting backwards) as well as nonverbal components.

■ In *Campbell v. Superior Court*, 106 Ariz. 542, 479 P.2d 685 (1971), our supreme court held that the privilege against self-incrimination was not violated by the provision of Arizona's implied consent law which permits the introduction of evidence of a refusal to submit to chemical tests required by that statute to determine blood alcohol content. See A.R.S. § 28–692(K). Against contentions that the refusal was a communication, as opposed to real or physical evidence, within the meaning of *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the court concluded: "It is the opinion of this court that since a person does not have a right to refuse to submit to the test and because the refusal itself is not 'testimonial communication' that comment upon such refusal is not improper." 106 Ariz. at 549, 479 P.2d at 692. The court added in a footnote:

> We are aware that the United States Supreme Court in *Schmerber* ... cautioned that testimonial products of administering such tests would fall within the privilege and that general fifth amendment principles would apply. We do not believe, however, that the inferences flowing from the wrongful refusal to submit to the test are such testimonial products.

106 Ariz. at 549 n. 6, 479 P.2d at 692 n. 6 (citations omitted).

It is not clear from the opinion whether the court concluded that the refusal was per se not a communication or that the refusal was somehow rendered "noncommunicative" because it was wrongful. See also *State v. Curiel*, 130 Ariz. 176, 634 P.2d 988 (App.1981) (wrongful refusal to give urine sample is nontestimonial; therefore, comment on refusal does not violate the Fifth Amendment). However, we agree with the Oregon court in *State v.*

*Green* that the dispositive issue for purposes of determining whether the Fifth Amendment has been violated is not whether the conduct constitutes a communication, but whether the communication is the result of governmental compulsion. The question then, is whether the refusal to take field sobriety tests is the result of governmental compulsion.

In concluding that the refusal in *State v. Green* was so compelled, the Oregon court reasoned as follows:

The state argues that the specie of evidence it seeks to use in this case is analogous to evidence of flight or a breath test refusal and is, therefore, admissible. We disagree. Evidence of refusal to take a field sobriety test is also communicative, but it is in a different category from evidence of flight or evidence of refusal to provide *required* noncommunicative evidence. There is no statutory or other legal requirement that a driver take the field sobriety tests, either before or after arrest. While an officer may properly request a driver to do so, the officer may go no further. Because defendant had no obligation to take the test, there could also be no conditions placed on his refusal. Use of the fact that he refused enables the state to obtain communicative evidence to which it would otherwise have no right, as a result of defendant's refusal to provide noncommunicative evidence to which it also had no right.

68 Or.App. at 525, 684 P.2d at 579 (emphasis in original). The critical factor for the Oregon court appears to have been its conclusion that the defendant was under no legal obligation to take the field sobriety tests. Regardless of the validity of that conclusion under Oregon law, in Arizona the law is otherwise.

In *State v. Superior Court*, 149 Ariz. 269, 718 P.2d 171 (1986), the supreme court rejected the contention that probable cause to arrest was required before an officer could conduct field sobriety tests. Relying on *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the court held that although such tests constitute a search

within the meaning of the Fourth Amendment, they "may be justified by an officer's reasonable suspicion (based on specific, articulable facts) that the driver is intoxicated." 149 Ariz. at 274, 718 P.2d at 176. The court reasoned as follows:

We think *Terry* is on point: the threat to public safety posed by a person driving under the influence of alcohol is as great as the threat posed by a person illegally concealing a gun. If nothing in the initial stages of the stop serves to dispel the highway patrol officer's reasonable suspicion, fear for the safety of others on the highway entitles him to conduct a "carefully limited search" by observing the driver's conduct and performance of standard, reasonable tests to discover whether the driver is drunk.

*Id.*

There is no contention that the officer in this case did not have grounds for stopping Spears, and for purposes of our decision, we will assume that the initial stop was supported by a reasonable suspicion that Spears was intoxicated. Under *State v. Superior Court*, it follows that the officer's request was lawful and, under *Schmerber v. California*, that Spears had no constitutional right to refuse his request.

The United States Supreme Court has held that evidence of refusal to take a blood alcohol test, expressly made admissible in court by a statute similar to our implied consent law, is not protected by the Fifth Amendment. *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). In concluding that the refusal was not an act coerced by the government, the court discussed the effect of the statutory provision pertaining to the consequences of refusal.

[T]he values behind the Fifth Amendment are not hindered when the State offers a suspect the choice of submitting to the blood-alcohol test or having his refusal used against him. The simple blood-alcohol test is so safe, painless, and commonplace ... that respondent concedes, as he must, that the State could legitimately compel the suspect, against his will, to accede to the test. Given,

278

then, that the offer of taking a blood-alcohol test is clearly legitimate, the action becomes no *less* legitimate when the State offers a second option of refusing the test, with the attendant penalties for making that choice. Nor is this a case where the State has subtly coerced respondent into choosing the option it had no right to compel, rather than offering a true choice. To the contrary, the State wants respondent to choose to take the test, for the inference of intoxication arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test.

459 U.S. at 563–564, 103 S.Ct. at 922, 74 L.Ed.2d at 758–759 (citation omitted; emphasis in original). If the offer to take a blood-alcohol test is "no less legitimate" when the state by statute gives the suspect the power to refuse, the offer to take field sobriety tests is certainly not less legitimate because the state has not enacted a similar legislative choice. The issue is not whether the defendant has a statutory power to refuse, but whether he has a constitutional right to refuse. We thus find the Oregon court's distinction in *State v. Green* between a refusal under an implied consent statute and a refusal to take a constitutionally-permissible field sobriety test to be meaningless. Since the officer's request in this case was lawful and Spears' refusal was not constitutionally protected, the refusal was not coerced and admission of evidence of that refusal does not violate Spears' privilege against self-incrimination.

■ Spears also contends that he was privileged to refuse the tests because they involved verbal as well as nonverbal components. In *State v. Theriault*, 144 Ariz. 166, 696 P.2d 718 (App.1984), we rejected the contention that performance on written alphabet and numbers field sobriety tests amounted to compulsory self-incrimination. The basis for that holding was our conclusion that the Fifth Amendment protects only that evidence which reveals the subjective knowledge or thought processes of the defendant. The purpose of the alphabet and numbers tests, whether written or oral, is not to reveal the defendant's subjective knowledge or thought processes, but rather to provide evidence of his physical condition. The significance of the results lies not in the substance of the answers but in the manner in which they are given. In this sense, such tests are no different than voice identification tests. See *State v. Conn*, 137 Ariz. 152, 669 P.2d 585 (App. 1982), affirmed in part, remanded in part, 137 Ariz. 148, 669 P.2d 581 (1983). We find no Fifth Amendment violation in requiring a suspect to perform verbal field sobriety tests such as those refused in the present case.

In sum, we hold that a defendant's privilege against self-incrimination is not violated by admission of evidence of his refusal to take lawfully-requested field sobriety tests. We further hold that tests requiring the recitation of the alphabet or numbers do not violate a defendant's Fifth Amendment rights. Accordingly, we grant relief and remand for further proceedings consistent with this opinion.

HATHAWAY, C.J., and HOWARD, P.J., concur.