**Certiorari Denied, June 12, 2012, No. 33,555**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-069**

**Filing Date: March 13, 2012**

**Docket No. 30,670**

**STATE OF NEW MEXICO,**

    **Plaintiff-Appellee,**

**v.**

**CARLOS A.,**

    **Child-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Sandra A. Price, District Judge**

Gary K. King, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

## OPINION

**FRY, Judge.**

**{1}** Carlos A. asks us to determine that his status as a minor rendered involuntary his consent to search the car he was driving because the police officer requesting the search failed to inform Carlos that he had the right to deny consent. We hold that minors have no greater rights than adults in the context of consent to search and that the officer's failure to

1

advise Carlos of the right to deny consent did not render his consent involuntary. We affirm the district court's denial of Carlos's suppression motion.

**BACKGROUND**

**{2}** The State filed a delinquency petition against Carlos charging him with distribution or possession with intent to distribute marijuana, possession of drug paraphernalia, and driving without a light illuminating the license plate. Carlos filed a motion to suppress, arguing primarily that his consent to search was invalid under NMSA 1978, Section 32A-2-14 (2009), *State v. Javier M.*, 2001-NMSC-030, 131 N.M. 1, 33 P.3d 1, the Fourth Amendment to the United States Constitution, and Article II, Section 10 of the New Mexico Constitution.

**{3}** Officer Guy Postlewait testified at the suppression hearing that on an evening in February 2010, he was on patrol in Farmington, New Mexico, when he observed a car whose license plate was unreadable from fifty feet. He initiated a traffic stop and made contact with Carlos, the driver. Officer Postlewait immediately smelled a very strong odor of marijuana coming from inside the car, and he saw a bandana with a marijuana-leaf design hanging from the rearview mirror. Carlos had no identification and no driver's license, but he told the officer his name, and the officer later confirmed his identity. Officer Postlewait asked Carlos why he could smell marijuana in the car, and Carlos responded that he had smoked marijuana about an hour before.

**{4}** At this point, Officer Postlewait asked Carlos to get out of his car and then asked whether Carlos minded if he searched Carlos's person for marijuana. Carlos said that he did not mind, and Officer Postlewait searched Carlos but found nothing. Officer Postlewait knew that he wanted to ask Carlos for consent to search his car so he called for backup. Captain Keith McPheeters, who was on his way home, arrived at the scene, and then Officer Travis Spruell arrived. Officer Postlewait asked Carlos for consent to search his car, and Carlos agreed. Although Officer Postlewait thought he could get a warrant to search the car if Carlos did not consent, he never mentioned a warrant to Carlos. Officer Postlewait testified that he has never advised anyone that they have the right to refuse consent.

**{5}** During Officer Postlewait's search of the car, he found several clear plastic bags containing a green, leafy substance and a metal pipe. Officer Postlewait's training and experience allowed him to conclude that the substance was similar to marijuana, and the pipe was the type commonly used to smoke marijuana. During the search of the car, dispatch contacted Officer Postlewait and told him that Carlos was seventeen years old.

**{6}** After completing the search of the car, Officer Postlewait called Carlos over, laid out the evidence on the police car's hood, and asked Carlos for his mother's phone number. He then read Carlos his rights from a card listing juvenile *Miranda* rights. When asked, Carlos said that he was willing to talk to Officer Postlewait, whereupon Carlos identified the substance as marijuana, admitted that the marijuana was his, and said that he had been

2

selling marijuana for about a week. The field test of the substance was presumptively positive for marijuana.

**{7}** Officer Postlewait testified about the circumstances surrounding the encounter. He said that Carlos was extremely friendly and polite and that Officer Postlewait treated him the same way. The replay of Officer Postlewait's car video confirmed the neutrality of the interaction. None of the officers drew a gun or spoke in a threatening manner. The detention from the time of the traffic stop to Officer's Postlewait's request to search the car was about three minutes, and it was about ten minutes from the time of the stop to the end of the car search. Carlos said that he was in a hurry to pick up his girlfriend at work and, once Officer Postlewait located the marijuana, he let Carlos call his girlfriend. Once the search was completed, the detention was extended while everyone waited for the car's registered owner and Carlos's parents to arrive.

**{8}** Carlos also testified at the suppression hearing. He was seventeen years old at the time and had dropped out of school in the tenth grade. He remembers only Officer Postlewait being on the scene when the officer asked if he could search Carlos's person, but there was "another guy" there when he asked to search the car. Before this occasion, a police officer had never asked Carlos to consent to a search, and Carlos did not know that he could refuse consent.

**{9}** At the conclusion of the hearing, the district court denied Carlos's suppression motion and stated that it had heard nothing indicating that Carlos's consent was not voluntarily given. It further stated that the law does not require a person to know that he or she has a right to deny consent to search and that the law does not expand juvenile rights in the context of searches. Carlos entered a conditional guilty plea, and this appeal followed.

**DISCUSSION**

**{10}** Carlos makes one argument on appeal. He maintains that, in keeping with the New Mexico Children's Code and *Javier M.*, juveniles are entitled to expanded rights under the Fourth Amendment to the United States Constitution and the New Mexico Constitution. Under these expanded rights, Carlos continues, Officer Postlewait should have advised him that he had the right to refuse consent to the search of his car. Carlos argues that because Officer Postlewait did not give him this advice, his consent was not voluntary.[1]

**{11}** In reviewing an order on a motion to suppress, "we defer to the district court's findings of fact that are supported by substantial evidence, and we review the district court's application of the law to the facts de novo." *State v. Randy J.*, 2011-NMCA-105, ¶ 10, 150

---

[1]Carlos does not argue on appeal that the statements he made in response to Officer Postlewait's questions should have been suppressed, although he does not appear to have waived that argument.

3

N.M. 683, 265 P.3d 734. To the extent that our analysis of Carlos's argument involves interpretation of the Children's Code, our review is de novo. *Id.*

**{12}** We understand Carlos to focus his argument on the validity of the car search under the Fourth Amendment. While Carlos mentions the New Mexico Constitution, he does not contend on appeal that the New Mexico Constitution confers broader rights than the United States Constitution. Moreover, Carlos has not offered any reasons supporting divergence from federal precedent in this area, which is required under the interstitial analysis adopted in *State v. Gomez*, 1997-NMSC-006, ¶¶ 19-22, 122 N.M. 777, 932 P.2d 1. As a result, we focus on Fourth Amendment jurisprudence as it has developed in our state. We first outline the Fourth Amendment's requirements for obtaining a valid consent to search from an adult and then consider whether the Children's Code imposes additional requirements when the accused is a minor.

**Consent Under the Fourth Amendment**

**{13}** The Fourth Amendment prohibits unreasonable searches by government officials and requires a search warrant unless certain exceptions to the warrant requirement are established. *See State v. Paul T.*, 1999-NMSC-037, ¶ 9, 128 N.M. 360, 993 P.2d 74. One such exception is a consensual search "because [such searches] are manifestly reasonable." *Id.* ¶ 28. To establish consent, the prosecution has the burden of proving, under the totality of the circumstances, that "the consent given to search [was] voluntary and not a product of duress, coercion, or other vitiating factors." *Id.* The voluntariness of consent is a fact question that we review for substantial evidence. *Id.*

**{14}** In assessing the totality of the circumstances, the fact finder considers factors such as "the individual characteristics of the person who gave consent, the circumstances under which the person is detained, and the manner in which [the] police requested the search." *Id.* (internal quotation marks and citation omitted). The ultimate inquiry is whether the will of the consenting person has been overborne. *State v. Flores*, 2008-NMCA-074, ¶ 13, 144 N.M. 217, 185 P.3d 1067.

**{15}** Our case law has also established that the Fourth Amendment does not require police officers "to first advise a person of his [or her] right to refuse consent in order to obtain a valid consent," at least in the context of a so-called "knock and talk" situation, where "police go to a suspect's home in an attempt to gain his [or her] cooperation." *Id.* ¶¶ 5, 16. Instead, "the presence or absence of [the] knowledge [of the right to refuse consent] is but one factor to consider in the matrix to determine whether a consent to search is voluntary." *Id.* ¶ 16.

**{16}** Significantly, *Flores* involved consent to search a home. Because "[t]he place afforded the greatest protection by the Fourth Amendment is a person's home," *id.*, ¶ 12, it is logical to conclude that a request to search a motor vehicle—which does not carry the same heightened expectation of privacy as a home—would be subject to the same analysis. *See State v. Bomboy*, 2008-NMSC-029, ¶ 12, 144 N.M. 151, 184 P.3d 1045 (clarifying that

4

the privacy interest in an automobile should not be equated with the privacy interest in a home); *see also State v. Valencia Olaya*, 105 N.M. 690, 694, 736 P.2d 495, 499 (Ct. App. 1987) (suggesting that knowledge of the right to refuse consent is not required in order to have effective consent to search an automobile).  It follows that a police officer requesting consent to search an automobile need not advise the person of the right to refuse consent in order to obtain valid consent, but the person's knowledge of this right is a factor to be considered in analyzing voluntariness.

**Minors Are Not Entitled to Broader Protections in This Context**

**{17}**    We now turn to the ultimate issue in this case, which is whether minors are entitled to broader protections than adults when they are asked to consent to automobile searches. Carlos contends that the Children's Code and the case law interpreting it reflect the recognition that "children are particularly vulnerable, even during simple investigative detentions, and should be advised of *all* of their options prior to a police officer taking any further action."

**{18}**    Carlos asks us to draw an analogy between a minor's rights under the Fourth Amendment and a minor's rights under the Fifth Amendment, which have been explicitly expanded by Section 32A-2-14(C) of the Children's Code.  That statute states that "[n]o person subject to the provisions of the Delinquency Act who is alleged or suspected of being a delinquent child shall be interrogated or questioned without first advising the child of the child's constitutional rights and securing a knowing, intelligent and voluntary waiver." Section 32A-2-14(C).  Our Supreme Court interpreted this provision as requiring that "children who are subject to investigatory detentions are statutorily entitled *only* to be warned of their right to remain silent and that anything they say can be used against them." *Javier M.*, 2001-NMSC-030, ¶ 41 (emphasis added).  In arguing that children should also be advised of their right to refuse consent to search, Carlos relies on specific language in *Javier M.*, where the Court stated, "Given a child's possible immaturity and susceptibility to intimidation, a child who is subject to an investigatory detention may feel pressures similar to those experienced by adults during custodial interrogation."  *Id.* ¶ 37.  Carlos maintains that this susceptibility to intimidation should lead us to impose an *additional* requirement that police advise children of their right to refuse consent to search.

**{19}**    We are not persuaded.  Section 32A-2-14(A) expressly states that a child is "entitled to the same basic rights as an adult, except as otherwise provided in the Children's Code." There is no provision in the Children's Code giving children greater rights under the Fourth Amendment than an adult enjoys.  In addition, the Court in *Javier M.* clarified that Section 32A-2-14 "only protects against a child's *statements* which are made during an investigatory detention in response to a police officer's questioning." *Javier M.*, 2001-NMSC-030, ¶ 40 (emphasis added).  Carlos does not argue that his consent to search the car constituted a statement subject to suppression under Section 32A-2-14.

5

**{20}** In addition, in cases this Court has decided since *Javier M.*, we have consistently refused to expand children's rights beyond those specifically provided in the Children's Code. In *State v. Lorenzo P.*, we rejected the child's argument that children are entitled to a different due process standard than the standard applied to adults. 2011-NMCA-013, ¶ 12, 149 N.M. 373, 249 P.3d 85. And in *State v. Candace S.*, 2012-NMCA-___, ¶ 26, ___ N.M. ___, ____ P.3d ___ (No. 30,331, Dec. 27, 2011), we concluded that a police officer is not required to advise a child that he or she may deny consent to perform field sobriety tests. We stated in *Candace S.* that "with the exception of th[e] very limited statutory requirement [in Section 32A-2-14] to advise a child of the right to remain silent and of the consequences of waiving that right, a child's constitutional rights are the same as an adult's rights." *Candace S.*, 2012-NMCA-____, ¶ 27. There is no authority requiring a police officer to advise an adult of the right to deny consent to search, and there is similarly no such requirement applicable to children.

**{21}** Carlos has not directed us to any authority granting children this expanded protection. He claims that the Florida Court of Appeals did so in *B.S. v. State*, 548 So. 2d 838 (Fla. Dist. Ct. App. 1989), but we do not agree. In *B.S.*, the child had been asked to accompany police to the police station for questioning. 548 So. 2d at 838-39. She complied and confessed to the crimes of which she was accused. *Id.* at 839. The appellate court concluded that the child's confession was "not procured through her voluntary consent" and should have been suppressed. *Id.* at 841. Thus, the issue in that case revolved around the Fifth Amendment guarantee against self-incrimination, not the Fourth Amendment as in the present case. As a result, the holding in *B.S.* is not persuasive. We therefore reject Carlos's argument that his status as a minor entitled him to be advised of the right to deny consent to search.

**Carlos's Consent Was Voluntary**

**{22}** We now consider whether substantial evidence supported the district court's finding that Carlos's consent to the car search was voluntary. *See Paul T.*, 1999-NMSC-037, ¶ 28 (explaining that "[w]hether consent was voluntarily given is a factual question, and the trial court's determination will not be disturbed on appeal unless it is not supported by substantial evidence"). The district court considered the factors informing the totality of the circumstances and noted that the contact between Officer Postlewait and Carlos took place quickly in a public setting, the contact was not hostile, and Officer Postlewait did not exert any unusual pressure on Carlos.

**{23}** Officer Postlewait's testimony supported these observations. He noted that Carlos pulled into a mall parking lot around 9:00 p.m. and that the encounter lasted about ten minutes from the time of the stop to the end of the car search. The audio record reveals a low-key, polite encounter and cooperation between Officer Postlewait and Carlos. When Officer Postlewait asked for consent to the car search, he said calmly, "Got any marijuana in your car? Okay, can I search it?" Carlos was seventeen at the time, so he was less than a year from adulthood. It is also clear from the district court's comments that it properly

6

considered the fact that Officer Postlewait did not advise Carlos that he could deny consent. *See Flores*, 2008-NMCA-074, ¶ 16 (explaining that knowledge or lack of knowledge of the right to deny consent "is but one factor to consider in the matrix to determine whether a consent to search is voluntary"). However, as we have indicated, this factor is not dispositive.

**{24}** We hold that substantial evidence supported the district court's finding that Carlos voluntarily consented to the search of the car. Therefore, we affirm the denial of Carlos's motion to suppress the evidence obtained as a result of the search.

**CONCLUSION**

**{25}** We affirm.

**{26}** **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**I CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

**RODERICK T. KENNEDY, Judge (specially concurring).**

**KENNEDY, Judge (specially concurring).**

**{27}** I write separately only to emphasize what the Opinion, in its latter discussion, suggests—that the issue of an inherently coercive atmosphere has been lost in the shuffle because it was eschewed by Defendant in emphasizing his "right" to be advised that he could refuse to consent to a search. I am concerned that a view toward the totality of the circumstances surrounding a juvenile's consent to search is broader than the issue Defendant argued.

**{28}** The facts show that the officer stopped Defendant, had him exit the car, frisked him, questioned him about his marijuana use, and detained him until two other officers arrived on the scene before asking him for consent to search the car. This smacks of a situation in which the voluntariness of Defendant's consent depends less on his knowledge that he can refuse consent and more on the coercive atmosphere inherent to this situation.

**{29}** In a more fully-developed case, I would be more inclined to follow the outline given us by the United States Supreme Court:

> [W]hen . . . the [s]tate attempts to justify a search on the basis of . . . consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 249-50 (1973).

_____

**RODERICK T. KENNEDY, Judge**

**Topic Index for *State v. Carlos A.*, Docket No. 30,670**

**APPEAL AND ERROR**
Standard of Review

**CHILDREN**
Detention

**CONSTITUTIONAL LAW**
Due Process
Fourth Amendment
Interstitial Analysis
New Mexico Constitution, General
Suppression of Evidence

**CRIMINAL LAW**
Controlled Substances

**CRIMINAL PROCEDURE**
Consent
Due Process
Motion to Suppress
Search and Seizure
Warrantless Search