**Certiorari Denied, September 16, 2011, No. 33,170**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-105**

**Filing Date: July 25, 2011**

**Docket No. 29,791**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellant,**

**v.**

**RANDY J.,**

      **Child-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Sandra A. Price, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellant

Jacqueline L. Cooper, Acting Chief Public Defender
J.K. Theodosia Johnson
Santa Fe, NM

for Appellee

**OPINION**

**GARCIA, Judge.**

**{1}** Whenever children are subject to an investigatory detention, they must be advised of their right to remain silent and advised that anything they say can be used against them. If a child is not advised of his or her rights, "any statement or confession" by the child is inadmissible in court pursuant to NMSA 1978, Section 32A-2-14(C), (D) (2003) (amended

1

2009). It is undisputed that Randy J. (Child) was subject to an investigatory detention for driving under the influence (DUI) and that the investigating officer failed to advise Child of his constitutional rights as required by Section 32A-2-14(C). However, the parties disagree regarding whether Child's responses during field sobriety tests, the results of a blood test taken following Child's arrest, and Child's implied consent to a blood test constitute statements that must be suppressed under Section 32A-2-14(D). The district court agreed with Child and suppressed the evidence. We hold that Child's responses during the field sobriety tests, results of the blood test, and Child's implied consent to the blood test are not statements that are subject to suppression under Section 32A-2-14(D). As a result, we reverse the district court's order of suppression and remand to the district court for further proceedings consistent with this Opinion.

## FACTUAL AND PROCEDURAL HISTORY

**{2}** On March 25, 2009, Officer Joseph Schake observed a vehicle fail to stop at a stop sign. Officer Schake stopped the vehicle and made contact with the driver, Child, who identified himself. Officer Schake detected the strong odor of what he knew based on his training and experience to be "burnt marijuana" coming from the vehicle. At that point, Officer Schake asked Child to exit the vehicle and accompany him to the back of the vehicle. While Officer Schake and Child were near the back of the vehicle, Officer Schake smelled "burnt marijuana" on Child's person. Officer Schake then conducted an investigation for a possible DUI.

**{3}** Officer Schake had Child perform three field sobriety tests: a horizontal gaze nystagmus tests (HGN), a walk-and-turn test, and a one-leg-stand test. During the HGN test, Officer Schake observed that Child had bloodshot, watery eyes and "slowed" facial expressions that were consistent with a subject who was on a depressant. During the walk-and-turn test, Child used very methodical and slow steps, swayed from side-to-side, stopped during the test, and held his arms up more than six inches for balance. During the one-leg-stand test, Child "hopped," held his arms up more than six inches for balance, swayed from side to side, did not keep his toe pointed, did not stare at his toe the entire time as instructed, and skipped a number while counting. Based on these observations, Officer Schake concluded that Child was "under the influence" and arrested him.

**{4}** Officer Schake transported Child to San Juan Regional Medical Center and read him the Implied Consent Act, NMSA 1978, § 66-8-107(A) (1993), after which Child's blood was drawn for testing. Officer Schake testified that he did not recall when he found out Child's age. Officer Schake further testified that he did not recall giving Child *Miranda* warnings or advising him of his constitutional rights as required by Section 32A-2-14(C) at any time.

**{5}** Child was sixteen years old at the time of the incident. On March 27, 2009, the State filed a petition alleging that Child was a delinquent child based upon the following: (1) driving while under the influence of alcohol or drugs, or in the alternative, driving while under the influence of any drug to a degree that rendered Child incapable of safely driving

2

a vehicle, contrary to NMSA 1978, Section 66-8-102(A), (B) (2008) (amended 2010); (2) driving without a valid license, contrary to NMSA 1978, Section 66-5-2(A)(1) (2007); (3) failure to stop and yield the right-of-way, contrary to NMSA 1978, Section 66-7-330(B) (1978); (4) possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001); and (5) possession of marijuana (one ounce or less), contrary to NMSA 1978, Section 30-31-23(B)(1) (2005) (amended 2011).

**{6}** Child filed a motion to suppress any statements or admissions he made to Officer Schake during the traffic stop, as well as any evidence obtained pursuant to those statements. Child relied on *State v. Javier M.*, 2001-NMSC-030, 131 N.M. 1, 33 P.3d 1, to argue that any statement or confession must be suppressed because Child was not advised of his constitutional rights as required by Section 32A-2-14(C). Specifically, Child indicated that after Officer Schake ordered him out of the vehicle, he admitted to smoking marijuana about an hour prior to the stop. Child further contended that any physical evidence seized by Officer Schake must be suppressed as the fruits of the unlawful questioning. Finally, Child relied on Section 32A-2-14 and Article II, Sections 14, 15, and 18 of the New Mexico Constitution to argue that children in New Mexico are provided broader protections than adults during police questioning. In response, the State conceded that Officer Schake failed to advise Child of his right to remain silent as required by Section 32A-2-14(C) and that any statement or confession should be suppressed. However, the State argued that Section 32A-2-14(D) did not require suppression of the physical evidence.

**{7}** At the hearing on the motion to suppress, Child argued that the fruits of the Section 32A-2-14(C) violation should be suppressed, including the field sobriety tests, the blood draw, and any consent by Child to conduct those tests. In response, the State relied on *Javier M.* to argue that Section 32A-2-14(D) only required suppression of any incriminating statements but not suppression of the physical evidence. The district court ultimately determined that Child was never advised of his constitutional rights pursuant to Section 32A-2-14(C) and relied on *Javier M.* to conclude that the remedy for the violation was suppression of the results of the field sobriety tests and the results of the blood test. The court reasoned that Child's responses during the tests were statements, and the results should be suppressed. The State disagreed that Child's responses during the field sobriety tests and blood tests were statements, and the court allowed the State to prepare a supplemental brief on that issue. The State filed a supplemental brief in support of its argument that the results of the field sobriety tests and blood tests are not statements and are not required to be suppressed under Section 32A-2-14(D) as interpreted by *Javier M.* At a subsequent hearing, the court ruled that Section 32A-2-14(D) required suppression of all of Child's statements, including the results of the field sobriety tests and the blood tests.

**{8}** The district court ordered "that no statement or confession, including Child's admission to smoking marijuana, consent to conduct field sobriety testing and drug analysis testing, and any results of field sobriety testing and drug analysis testing, may be introduced at trial or hearing." The court further dismissed the allegation in Count I of driving under the influence of intoxicating liquor or drugs for lack of evidence. The State appealed.

3

**DISCUSSION**

**{9}** On appeal, the State argues that Child's performance on the field sobriety tests, the results of the blood test, and any consent by Child to submit to the blood test do not constitute statements or confessions under Section 32A-2-14(D). As a result, the State contends that Section 32A-2-14(D) does not require suppression of that evidence as a remedy for the failure to advise Child of his constitutional rights as required by Section 32A-2-14(C).

**Standard of Review**

**{10}** In reviewing an order of suppression, we defer to the district court's findings of fact that are supported by substantial evidence, and we review the district court's application of the law to the facts de novo. *State v. Gerald B.*, 2006-NMCA-022, ¶ 13, 139 N.M. 113, 129 P.3d 149. The relevant facts are undisputed. On appeal, we must determine as a matter of law whether the district court erred in determining that Child's responses during the field sobriety tests, the results of his blood test, and his implied consent to the blood test are statements that must be suppressed pursuant to Section 32A-2-14(D). Our review also involves interpretation of Section 32A-2-14(D) and the Implied Consent Act. As a result, we review the district court's order of suppression de novo. *See State v. Jade G.*, 2007-NMSC-010, ¶ 15, 141 N.M. 284, 154 P.3d 659 (stating that appellate courts review issues involving statutory interpretation de novo); *see also Gerald B.*, 2006-NMCA-022, ¶¶ 13, 19 (applying a de novo standard in reviewing the district court's application of the law to the facts to determine whether a violation of Section 32A-2-14 occurred).

**Section 32A-2-14(D) Provides That the Remedy for a Violation of Section 32A-2-14(C) Is Suppression of a Child's Statements or Confessions**

**{11}** "Our primary goal when interpreting statutory language is to give effect to the intent of the [L]egislature." *State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. "The text of a statute . . . is the primary, essential source of its meaning." NMSA 1978, § 12-2A-19 (1997). "Under the plain meaning rule[,] statutes are to be given effect as written without room for construction unless the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity[,] or contradiction[.]" *State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. If a statute's meaning is clear, our responsibility is "to apply the statute as written and not to second-guess the [L]egislature's selection from among competing policies or adoption of one of perhaps several ways of effectuating a particular legislative objective." *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 352, 871 P.2d 1352, 1358 (1994).

**{12}** In pertinent part, Section 32A-2-14(C), (D) states the following:

> C. No person subject to the provisions of the Delinquency Act
> who is alleged or suspected of being a delinquent child shall be interrogated

4

or questioned without first advising the child of the child's constitutional rights and securing a knowing, intelligent[,] and voluntary waiver.

D.     Before any *statement or confession* may be introduced at a trial or hearing when a child is alleged to be a delinquent child, the state shall prove that the *statement or confession* offered in evidence was elicited only after a knowing, intelligent[,] and voluntary waiver of the child's constitutional rights was obtained.

(Emphasis added.)

**{13}**     The protections of Section 32A-2-14 are triggered in two circumstances:  (1) when a child is subject to an investigatory detention, and (2) after formal charges are filed against a child.  *Javier M.*, 2001-NMSC-030, ¶ 38.  When children are subject to investigatory detentions, they must be advised of "their right to remain silent and that anything they say can be used against them."  *Id.*  ¶ 41.  Section 32A-2-14(D) provides the remedy for a violation of a child's rights under Section 32A-2-14(C). *Javier M.*, 2001-NMSC-030, ¶ 27.  Specifically, Section 32A-2-14(D) indicates that "[i]f a child is not advised of the right to remain silent and warned of the consequence of waiving that right, any statement or confession obtained as a result of the detention or seizure is inadmissible in any delinquency proceeding."  *Javier M.*, 2001-NMSC-030, ¶ 1.  The State concedes that Child was subject to an investigatory detention and that his rights were violated by Officer Schake's failure to inform Child of his constitutional rights as required by Section 32A-2-14(C).  However, the State contends that the district court erred in concluding that Child's performance on the field sobriety tests, results of the blood test, and consent to the blood test were statements subject to suppression under *Javier M.* and Section 32A-2-14(D).

**{14}**     The State asserts that whether evidence constitutes a "statement or confession" under Section 32A-2-14(D) is synonymous with whether the evidence is testimonial for purposes of the privilege against self-incrimination provided by the Fifth Amendment to the United States Constitution.  The State relies upon reasoning in *Javier M.* that the Legislature enacted Section 32A-2-14 to extend the privilege against self-incrimination to children during investigatory detentions, regardless of whether the child invoked the privilege.  *See Javier M.*, 2001-NMSC-030, ¶ 44.  Child appears to agree that the meaning of a "statement or confession" under Section 32A-2-14(D) is consistent with the meaning of what is testimonial for purposes of the Fifth Amendment privilege.  As a result, we analyze this case on the basis of this premise.  We consider whether Child's responses during the field sobriety and blood tests constitute statements under Section 32A-2-14(D) consistent with whether those responses are testimonial under the Fifth Amendment privilege against self-incrimination.

**Child's Responses During the Field Sobriety Tests Do Not Constitute Statements Under Section 32A-2-14(D)**

**{15}**     We first consider whether the district court erred in determining that Child's

5

responses during the field sobriety tests were statements that must be suppressed pursuant to Section 32A-2-14(D). As previously described, Child performed three field sobriety tests: the HGN, the walk-and-turn test, and the one-leg-stand test.

**{16}** Under the Fifth Amendment, "the privilege against self-incrimination only protects the accused from being compelled to provide the state with evidence of a testimonial or communicative nature and does not protect a suspect from being compelled by the state to produce real or physical evidence." *City of Rio Rancho v. Mazzei*, 2010-NMCA-054, ¶ 26, 148 N.M. 553, 239 P.3d 149 (internal quotation marks and citation omitted), *cert. denied*, 2010-NMCERT-005, 148 N.M. 575, 240 P.3d 1049. Accordingly, physical evidence, such as blood, breath, and fingerprints, is excluded from the scope of the protection against self-incrimination. *Mazzei*, 2010-NMCA-054, ¶ 25. Relying on *Pennsylvania v. Muniz*, 496 U.S. 582, 592 (1990), this Court has also concluded that "[a] person's responses to a field sobriety test are, at least for the most part, not testimonial." *State v. Wright*, 116 N.M. 832, 835, 867 P.2d 1214, 1217 (Ct. App. 1993). This appeal requires us to examine under what circumstances a person's responses during a field sobriety test are testimonial.

**{17}** In *Muniz*, the Supreme Court held that the defendant's slurred speech and lack of muscular coordination during the HGN, walk-and-turn, and one-leg-stand field sobriety tests were not testimonial. 496 U.S. at 585-86, 591-92. The Court reasoned that the privilege against self-incrimination "is a bar against compelling communications or testimony, but that compulsion which makes a suspect or accused the source of real or physical evidence does not violate it." *Id.* at 591 (internal quotation marks and citation omitted). In contrast, the Court held that the defendant's response to a question regarding whether he remembered the date of his sixth birthday was testimonial. *Id.* at 598-99. Testimonial evidence "encompass[es] all responses to questions that, if asked of a sworn suspect during a criminal trial, could place the suspect in the cruel trilemma [of self-accusation, perjury, or contempt]." *Id.* at 596-97 (internal quotation marks omitted). Because the defendant could not remember or calculate the date of his sixth birthday, he was confronted with the choice of incriminating himself by admitting that he did not know the date or answering untruthfully by answering with a date that he did not believe to be accurate. *Id.* at 599. As a result, the Court concluded that the defendant's response to the sixth-birthday question was testimonial and that suppression was required under the Fifth Amendment. *Id.* at 599-600. Nonverbal conduct such as Child's performance on the tests, however, is testimonial only if the conduct reflects a person's communication of his or her thoughts to another, or conveys knowledge of a fact specific to the person asked to perform the tests. *See id.* at 595 n.9 ("[N]onverbal conduct contains a testimonial component whenever the conduct reflects the actor's communication of his thoughts to another."); *see also Vanhouton v. Commonwealth*, 676 N.E.2d 460, 466 (Mass. 1997) (reasoning that in order to be testimonial, a statement must "convey knowledge of a[] fact specific to the person being questioned").

**{18}** Based upon the reasoning in *Muniz*, we conclude that evidence of Child's lack of muscular coordination during the field sobriety tests is not a statement subject to suppression under Section 32A-2-14(D). The mere fact that Child was a source of real or physical

evidence does not make that evidence a statement under that section. *See Muniz*, 496 U.S. at 591. Furthermore, Child's nonverbal responses to requests that he perform the HGN, walk-and-turn test, and one-leg-stand test did not relate a factual assertion about himself or otherwise reveal his thoughts to Officer Schake. *See id.* at 595 n.9; *Vanhouton*, 676 N.E.2d at 466. As a result, we reverse the district court's suppression of the evidence of Child's lack of muscular coordination during the field sobriety tests. *See Muniz*, 496 U.S. at 585-86, 592.

{19} We further conclude that Child's response to Officer Schake's request that he count during the one-leg-stand test is not a statement under Section 32A-2-14(D). *Muniz* expressly declined to consider whether counting during field sobriety tests was testimonial under the Fifth Amendment. *See* 496 U.S. at 603 n.17. The majority of states that have considered the issue have concluded that counting or reciting the alphabet during a field sobriety test is not testimonial under the Fifth Amendment. *See, e.g.*, *State v. Super. Ct. of Ariz.*, 742 P.2d 286, 289 (Ariz. Ct. App. 1987); *Hughes v. State*, 378 S.E.2d 853, 854 (Ga. 1989); *State v. Maze*, 825 P.2d 1169, 1173 (Kan. Ct. App. 1992); *Vanhouton*, 676 N.E.2d at 466; *State v. Devlin*, 1999 MT 90, ¶ 20, 294 Mont. 215, 980 P.2d 1037; *State v. Zummach*, 467 N.W.2d 745, 746 (N.D. 1991); *Gassaway v. State*, 957 S.W.2d 48, 51 (Tex. Crim. App. 1997) (en banc).

{20} Counting or recitation of the alphabet during a field sobriety test do not relate factual assertions specific to the person being questioned or otherwise require a person to reveal his or her thoughts to another. *See Muniz*, 496 U.S. at 595 n.9; *Vanhouton*, 676 N.E.2d at 466. Unlike remembering and calculating the date of one's own sixth birthday, counting or recitation of the alphabet during a field sobriety test "lack[] inherent communicative value because [they] do[] not convey knowledge of any fact specific to the person being questioned." *Vanhouton*, 676 N.E.2d at 466. Instead, the purpose of counting or recitation of the alphabet during a field sobriety test is to provide evidence of a person's physical condition. *Super. Ct. of Ariz.*, 742 P.2d at 289. The Fifth Amendment privilege against self-incrimination "does not protect a suspect from being compelled by the state to produce real or physical evidence." *Mazzei*, 2010-NMCA-054, ¶ 26 (internal quotation marks and citation omitted). As a result, we conclude that a response to a request to count during a field sobriety test is not testimonial under the Fifth Amendment. We similarly conclude that Child's response to Officer Schake's request that he count during the one-leg-stand test does not constitute a statement under Section 32A-2-14(D). We reverse the district court's order suppressing the results of Child's field sobriety tests under Section 32A-2-14(D).

**Implied Consent to Submit to a Blood Test Does Not Constitute a Statement Under Section 32A-2-14(D)**

{21} We next address whether the district court erred in determining that Child's consent to submit to a blood test under the Implied Consent Act constitutes a statement under Section 32A-2-14(D). Following Child's arrest on allegations of DUI, Officer Schake transported Child to the San Juan Regional Medical Center and read him the Implied Consent Act. The

7

State asserts that it is undisputed that Child then agreed to the administration of the blood test, and Child does not dispute that allegation. Child's blood was then drawn for drug testing.

**{22}** Pursuant to the Implied Consent Act,

> [a]ny person who operates a motor vehicle within [New Mexico] shall be deemed to have given consent . . . to chemical tests of his breath or blood or both . . . for the purpose of determining the drug or alcohol content of his blood if [that person is] arrested for any offense arising out of the acts alleged to have been committed while the person was driving a motor vehicle while under the influence of an intoxicating liquor or drug.

Section 66-8-107(A). Additionally, "Section 66-8-107(B) authorizes an officer who has reasonable grounds to believe a person may be driving while under the influence of intoxicating liquor [or drugs] to request that the person agree to take a chemical test to determine blood alcohol [or drug] content." *Mazzei*, 2010-NMCA-054, ¶ 24.

**{23}** We conclude that Child's consent pursuant to the Implied Consent Act is not a statement under Section 32A-2-14(D). Section 66-8-107(A) expressly states that "[a]ny person" who drives a vehicle in New Mexico is deemed by law to have consented to a drug test if that person is arrested upon allegations of DUI. Furthermore, the Motor Vehicle Code defines "person" to include "every natural person." NMSA 1978, § 66-1-4.14(E) (1999). As a result, we conclude that Section 66-8-107(A) applies to a sixteen-year-old person who drives a vehicle in New Mexico and is arrested upon allegations of DUI. Thus, Child's consent to the blood test was implied as a matter of law under Section 66-8-107(A).

**{24}** Child's implied consent to the blood test is not inadmissible pursuant to Section 32A-2-14(D) because it is not a statement. In *Mazzei*, this Court concluded that a "[d]efendant was not entitled to *Miranda* warnings prior to being advised and tested pursuant to the Implied Consent Act." 2010-NMCA-054, ¶ 27. We reasoned that physical evidence, such as blood, breath, and fingerprints, is excluded from the scope of the protection against self-incrimination. *Id.* ¶ 25. "Because of this exclusion, New Mexico common law requires explicit *Miranda*-type warnings only in situations where an accused is asked to provide testimonial or communicative evidence and does not require such warnings [when an accused is asked to provide] physical evidence." *Id.* This Court concluded that the officer's questioning of the defendant required only a simple yes or no answer regarding whether he agreed to take the test, and, therefore, the defendant's response was not testimonial in nature. *Id.* ¶ 27. We similarly conclude that Child's consent to take a blood test pursuant to the Implied Consent Act is not a statement and does not require exclusion under Section 32A-2-14(D). As a result, we reverse the district court's suppression of Child's consent to the blood test pursuant to Section 32A-2-14(D).

**The Results of a Blood Test Do Not Constitute Statements Under Section 32A-2-14(D)**

8

**{25}** Finally, we address whether the district court erred in determining that a blood test is a statement that must be excluded under Section 32A-2-14(D).

**{26}** In *State v. Simpson*, 116 N.M. 768, 773, 867 P.2d 150, 1155 (1993), the defendant argued that the district court erred in admitting the results of his blood-alcohol test because it was obtained without first advising him of his *Miranda* rights. Our Supreme Court held that blood-alcohol tests are non-testimonial evidence that are not protected by the Fifth Amendment. *Id.* Consequently, the Court held that the defendant's Fifth Amendment rights were not violated when his blood was drawn without his having previously received a *Miranda* warning and affirmed the admission of the blood test results. *Id.* at 773-74, 867 P.2d at 1155-56. We similarly conclude that Child's blood test results are not statements under Section 32A-2-14(D). As a result, we reverse the district court's order suppressing Child's blood test results pursuant to Section 32A-2-14(D).

### Whether Article II, Section 15 Provides Greater Protection Than the Fifth Amendment

**{27}** Child argues that Article II, Section 15 of the New Mexico Constitution provides broader protection than the Fifth Amendment. Specifically, Child contends that "given New Mexico's stronger protection of an individual's privacy, . . . physical evidence that is private . . . should be protected by [Article II], Section 15. As a result, Child asserts that the field sobriety tests violated the privilege against self-incrimination under Article II, Section 15, and that this Court should affirm the district court under the right for any reason doctrine.

**{28}** Child acknowledges that Article II, Section 15 has not previously been interpreted more expansively than the Fifth Amendment privilege against self-incrimination. *See State v. Perry*, 2009-NMCA-052, ¶¶ 23, 31, 146 N.M. 208, 207 P.3d 1185 (concluding that the defendant failed to demonstrate that Article II, Section 15 provides greater protection than the Fifth Amendment). Child also concedes that he did not preserve his argument that Article II, Section 15 provides broader protection than the Fifth Amendment. "As the appellee, however, [Child] was not strictly required to preserve his arguments[.]" *State v. Granville*, 2006-NMCA-098, ¶ 12, 140 N.M. 345, 142 P.3d 933. "Under the right for any reason doctrine, we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." *State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684 (internal quotation marks and citation omitted). This Court will not, however, assume the role of the district court and delve into fact-dependent inquiries. *Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154. Similarly, we will not affirm the district court under the right for any reason doctrine if it would result in unfairness to the appellant. *State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828.

**{29}** Even if we were to assume, without deciding, that Child presented the necessary factual allegations to support his Article II, Section 15 claim below, Child has failed to adequately develop his argument that Article II, Section 15 provides broader protection than the Fifth Amendment. On appeal, this Court must analyze the facts and determine whether

9

Article II, Section 15 affords Child broader protection than the Fifth Amendment. *See State v. Leyva*, 2011-NMSC-009, ¶ 40 n.6, 149 N.M. 435, 250 P.3d 861 (clarifying that "[i]f a state constitutional argument has been preserved, the role of the appellate court is to conduct the interstitial analysis if necessary, reviewing the reasons for departure and determining whether departure is warranted under the particular provision"). "[W]e may diverge from federal precedent for three reasons: a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics." *State v. Ketelson*, 2011-NMSC-023, ¶ 10, ___ N.M. ___, ___ P.3d ___ (internal quotation marks and citation omitted).

**{30}**     In the present case, Child failed to analyze any of these reasons for diverging from federal precedent either below or on appeal. Instead, Child asserts that Article II, Section 15 should be interpreted more broadly than the Fifth Amendment because "[r]equiring an individual to consent to a search without warning that the results of that search could be used against the individual is antithetical to the protections of privacy New Mexico prides itself on." However, Child fails to explain how the protection of privacy relates to the privilege against compelled self-incrimination. *See State v. Johnson*, 2010-NMSC-016, ¶¶ 14, 18, 148 N.M. 50, 229 P.3d 523 (reasoning that Article II, Section 15 and the Fifth Amendment protect against compelled or coerced self-incrimination). We will not review undeveloped or unclear arguments on appeal. *See State v. Gonzales*, 2011-NMCA-007, ¶ 19, 149 N.M. 226, 247 P.3d 1111 (stating that "this Court has no duty to review an argument that is not adequately developed"); *see also State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 (reasoning that "[a] party cannot throw out legal theories without connecting them to any elements and any factual support for the elements" (internal quotation marks and citation omitted)). Accordingly, we conclude that Child has failed to persuade this Court that he should receive greater protection, and we therefore decline to consider whether Child's responses during the field sobriety test are testimonial under Article II, Section 15.

**Whether Article II, Section 10 Requires Suppression of the Results of the Field Sobriety Tests**

**{31}**     Relying again on the right for any reason doctrine, Child argues that this Court must uphold the order of suppression because field sobriety tests constitute a search under Article II, Section 10 of the New Mexico Constitution, and the State failed to meet its burden of showing an exception to the warrant requirement or that Child voluntarily consented to the search. In response, the State asserts that the district court erred when it suppressed the results of the field sobriety tests because the request for Child to perform the tests was justified by a reasonable suspicion of DUI.

**{32}**     We examine the factual allegations below to determine whether affirmance is merited under the right for any reason doctrine. *See Vargas*, 2008-NMSC-019, ¶ 8. At the suppression hearing, Child argued that any consent to perform the field sobriety tests was tainted by a violation of Article II, Section 10. Child contended that without his admission to smoking marijuana, which was obtained in violation of Section 32A-2-14(C), Officer

Schake did not have individualized, reasonable suspicion that Child was driving under the influence. Child reasoned that the odor of marijuana emanating from the vehicle provided only generalized suspicion because there were five occupants of the vehicle. As a result, Child argued that the district court should carefully scrutinize whether any consent by him to perform the field sobriety tests was voluntary. Child further asserted that, at a minimum, the district court should suppress all evidence related to the DUI investigation unless the State could provide additional individualized suspicion as to Child.

**{33}** Under Article II, Section 10, an officer must have a reasonable justification for the initial traffic stop. *Leyva*, 2011-NMSC-009, ¶ 55. All questions asked during the stop must be either (1) reasonably related to the initial justification for the stop; or (2) unrelated questions that are supported by independent reasonable suspicion, justified by officer safety concerns, or asked during a time when the interaction has developed into a consensual encounter. *Id.* In order to expand the scope of an investigation, "[a] law enforcement officer must have reasonable and articulable suspicion that other criminal activity has been or may be afoot." *Id.* ¶ 59 (internal quotation marks and citation omitted). We evaluate whether reasonable suspicion existed as a matter of law based on the totality of the circumstances. *Id.* ¶ 30.

**{34}** Child does not dispute that the initial stop was lawful based upon his failure to stop at a stop sign. *See id.* ¶ 55. Furthermore, we conclude that reasonable suspicion supported the expansion of the scope of the stop to investigate a possible DUI even without considering Child's admission to smoking marijuana. *See id.* ¶ 59. When Officer Schake approached the vehicle on the driver's side, he detected the strong odor of what he knew to be "burnt marijuana" coming from the vehicle based on his training and experience. Additionally, after Officer Schake asked Child to exit the vehicle and accompany him to the back of the vehicle, Officer Schake smelled "burnt marijuana" on Child's person. Officer Schake then began an investigation for a possible DUI, including the field sobriety tests. We conclude that the odor of marijuana emanating from the vehicle combined with the odor of marijuana on Child's person provided objective, articulable facts that would lead a reasonable officer to suspect that Child was driving under the influence. *See State v. Candelaria*, 2011-NMCA-001, ¶¶ 4, 21, 149 N.M. 125, 245 P.3d 69 (reasoning that the odor of marijuana emanating from the vehicle provided reasonable suspicion to continue the detention of the driver of the vehicle); *see also State v. Walters*, 1997-NMCA-013, ¶¶ 6, 26, 123 N.M. 88, 934 P.2d 282 (reasoning that the odor of alcohol gave the officer reasonable suspicion to investigate whether the defendant was driving under the influence through field sobriety testing). As a result, Officer Schake permissibly expanded the scope of the traffic stop to investigate a possible DUI. Furthermore, we have held that administration of field sobriety tests is a reasonable part of an investigation where the officer has reasonable suspicion that the person was driving under the influence of alcohol or drugs. *See, e.g., State v. Williamson*, 2000-NMCA-068, ¶¶ 8-9, 129 N.M. 387, 9 P.3d 70. Accordingly, we reject Child's argument that Article II, Section 10 requires suppression of the results of the field sobriety tests.

**CONCLUSION**

**{35}** We hold that Child's responses during the field sobriety tests, results of the blood test, and implied consent to the blood test are not statements that are subject to suppression under Section 32A-2-14(D). As a result, we reverse the district court's order of suppression and dismissal of Count I of the petition based on insufficient evidence of DUI. We remand to the district court for further proceedings consistent with this Opinion.

**{36}   IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**CYNTHIA A. FRY, Judge**

**Topic Index for _State v. Randy J._, No. 29,791**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-PA | Preservation of Issues for Appeal |
| AE-RR | Right for Any Reason Doctrine |
| AE-SR | Standard of Review |
| | |
| **CD** | **CHILDREN** |
| CD-CC | Children's Code |
| CD-DT | Detention |
| CD-YO | Youthful Offender |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-FA | Fourth Amendment |
| CT-IT | Interstitial Analysis |
| CT-MW | Miranda Warnings |
| CT-NM | New Mexico Constitution, General |
| CT-PR | Privacy |
| CT-SU | Suppression of Evidence |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CL | Controlled Substances |

| | |
|---|---|
| CL-DG | Driving While Intoxicated |

| | |
|---|---|
| **CA** | **CRIMINAL PROCEDURE** |
| CA-IC | Implied Consent |
| CA-MW | Miranda Warnings |
| CA-MR | Motion to Suppress |
| CA-PA | Probable Cause |
| CA-RS | Reasonable Suspicion |
| CA-RA | Right Against Self-incrimination |
| CA-SZ | Search and Seizure |
| CA-SI | Self-incrimination |
| CA-SE | Substantial or Sufficient Evidence |
| CA-WA | Warrantless Arrest |
| CA-WS | Warrantless Search |

| | |
|---|---|
| **EV** | **EVIDENCE** |
| EV-BT | Blood/Breath Tests |