This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39332**

**CITY OF RIO RANCHO,**

Plaintiff-Appellant,

v.

**CODY M. LATTIN,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**George P. Eichwald, District Judge**

City of Rio Rancho
Gina R. Manfredi, Assistant City Attorney
Rio Rancho, NM

for Appellant

D. Eric Hannum
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** The City of Rio Rancho appeals the district court's grant of Defendant Cody Lattin's motion to suppress evidence for lack of reasonable suspicion to expand his traffic stop into a DWI investigation and dismissal of this case. We affirm.

## BACKGROUND

**{2}** In November 2018, Officer Isaac Giannini, with the Rio Rancho Police Department, initiated a traffic stop after clocking the driver, later identified as Defendant, driving a truck forty-two miles per hour in a thirty-mile-per-hour zone. After stopping

Defendant, Officer Giannini asked Defendant for his driver's license and proof of insurance. Defendant handed Officer Giannini his registration and then his driver's license, but not his proof of insurance. Officer Giannini asked Defendant, "Why are you flying through our streets man?" Defendant responded, "You know me, Isaac." Officer Giannini asked, "From where?" Defendant responded, "Rio Arriba and Santa Fe County." Officer Giannini told Defendant that he saw him slow down for the speed van, pick up his speed again, and had been swerving all over the place. Defendant replied that he had been talking on his phone. Officer Giannini then returned the proof of registration to Defendant and told him he would be right back.

{3}     Officer Giannini returned to his patrol vehicle, where he contacted Officer Smith and told him that he had a possible DWI suspect and that he wanted Officer Smith to perform the investigation. Officer Giannini told Officer Smith that Defendant had been driving forty-two miles per hour in a thirty-mile-per-hour zone; that Defendant had been an officer with another agency, but that he did not know if Defendant was still an officer; that Defendant was trying to avoid eye contact with him; when he asked Defendant for proof of insurance, Defendant gave him his registration; and that Defendant was trying to look up his insurance on his phone, but was actually just going through text messages. Officer Giannini also stated that because Defendant's truck was lifted, he could not really smell anything.

{4}     Defendant was subsequently charged with one count of driving under the influence of intoxicating liquor/drugs, contrary to Rio Rancho Municipal Code (RRMC), Rio Rancho, N.M., Rev. Ordinances ch. 70, art. VI, § 12-6-12.1 (2007, amended 2022), and one count of failure to maintain traffic lane, contrary to RRMC, Rio Rancho, N.M., Rev. Ordinances ch. 70, art. V, § 12-5-14 (2022).

{5}     Defendant was convicted of both counts at a bench trial in Rio Rancho Municipal Court. Defendant appealed his conviction under Rule 8-703 NMRA in a de novo trial in the Thirteenth Judicial District Court. In district court, Defendant moved to suppress all evidence from the DWI investigation, arguing the officers lacked reasonable suspicion to expand the initial traffic stop in violation of the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. The City of Rio Rancho responded that Officer Giannini had observed Defendant's driving, slurred speech, and watery eyes, creating reasonable suspicion to expand his investigation.

{6}     During the evidentiary hearing on the motion, Officer Giannini testified fairly consistently with the facts set forth above. However, he added (1) the passenger side windows on Defendant's truck were rolled down and the rear driver's side window was rolled up, which, based on his experience, is indicative of people trying to hide the odor of narcotics or alcohol; and (2) he believed he noticed Defendant's eyes were bloodshot and watery.

{7}     Officer Giannini testified that he believed a DWI investigation was warranted based on (1) Defendant's driving, (2) Defendant avoiding eye contact during the stop, (3) the position of the windows, and (4) his belief Defendant had slurred speech and

bloodshot, watery eyes. During cross-examination, Officer Giannini clarified that Defendant's pronouncement of the word "Coors" was slurred and that he remembered telling Officer Smith that it was hard to see if Defendant's eyes were bloodshot and watery.

{8}    The City and the defense provided the district court with a video recording of the traffic stop and DWI investigation. The district court stated that it would view the recording "as far as when Officer Giannini is conversing with Officer Smith." The City agreed that it was appropriate and seemingly reiterated that the district court need only view the recording from the beginning up to the point where Officer Giannini stepped back to call Officer Smith.

{9}    At the conclusion of the hearing, the district court explained that it gives "a lot more deference to statements that are made closest in time to the incident" and noted that in the video "Officer Giannini did, in fact, state that he could not smell the odor of alcohol, also, that he . . . did state that he could not detect slurred speech, [and] he couldn't tell whether [Defendant] had bloodshot, watery eyes." The district court found that under the totality of the circumstances, Officer Giannini lacked reasonable suspicion to contact Officer Smith in order to initiate a DWI investigation and granted the motion to suppress and dismissed the case. This appeal followed.

## DISCUSSION

{10}    The City appeals the district court's grant of Defendant's motion to suppress, arguing that reasonable suspicion existed to expand the initial traffic stop. The City asserts the following facts supported Officer Giannini's reasonable suspicion to expand the traffic stop into a DWI investigation: (1) Defendant's speeding, (2) Defendant's failure to maintain his lane, (3) the window orientation on Defendant's truck, (4) Defendant's attempt to avoid looking at Officer Giannini, (5) Defendant's eyes looked red, and (6) Defendant's act of handing over his proof of registration when he was asked for proof of insurance. Defendant responds that the City lacks evidence of the typical signs of alcohol impairment and that the district court correctly found the officer lacked reasonable suspicion to expand the traffic stop based on these facts.

{11}    "In reviewing an order of suppression, we defer to the district court's findings of fact that are supported by substantial evidence, and we review the district court's application of the law to the facts de novo." *State v. Randy J.*, 2011-NMCA-105, ¶ 10, 150 N.M. 683, 265 P.3d 734.

{12}    The City argues that the district court's findings of fact were not supported by substantial evidence. The City contends that the statement made to Officer Giannini about Defendant knowing him, Defendant's failure to produce the correct documentation, and the positioning of the windows must be taken together with the driving behavior, the slurred word, and possible bloodshot eyes when determining whether reasonable suspicion existed. According to the City, the district court "either failed to consider . . . or improperly disregarded" facts that supported Officer Giannini's

reasonable suspicion. We hold that the district court's findings are supported by substantial evidence, and to the extent that the City asks us to consider contrary facts, "[a]ll reasonable inferences in support of the district court's decision will be indulged in, and all inferences or evidence to the contrary will be disregarded." *State v. Johnson*, 2006-NMSC-049, ¶ 9, 140 N.M. 653, 146 P.3d 298 (alteration, internal quotation marks, and citation omitted).

**{13}** Defendant focuses on Article II, Section 10 of the New Mexico Constitution as the basis for his motion to suppress. As a result, we limit our analysis to that constitutional provision. This Court uses a two-part test to determine the reasonableness of an expanded traffic stop under Article II, Section 10*. See State v. Duran*, 2005-NMSC-034, ¶ 23, 138 N.M. 414, 120 P.3d 836, *overruled on other grounds by State v. Leyva*, 2011-NMSC-009, ¶ 17 149 N.M. 435, 250 P.3d 861 (upholding *Duran* as the appropriate test for reviewing searches and seizures under Article II, Section 10 of the New Mexico Constitution). The *Duran* Court adopted the test set out in *Terry v. Ohio*, 392 U.S. 1, 20 (1968), which considers "[(1)] whether the officer's action was justified at its inception, and [(2)] whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Duran*, 2005-NMSC-034, ¶ 23 (quoting *Terry*, 392 U.S. at 20).

**{14}** Defendant concedes that the initial traffic stop meets the first part of *Duran*. During the suppression hearing, Officer Giannini testified that he stopped Defendant for speeding and crossing over into the number two lane three separate times. We agree that the officer's action was justified at its inception and therefore do not analyze Officer Giannini's conduct under the first part of *Duran*.

**{15}** Under the second part of *Duran*, an officer who makes a valid investigatory stop may expand the scope of the seizure "only where the officer has reasonable and articulable suspicion that other criminal activity has been or may be afoot." *Id.* ¶ 23 (internal quotation marks and citation omitted). "Questions of reasonable suspicion are reviewed de novo by looking at the totality of the circumstances to determine whether detention was justified." *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken the law." *Id.* ¶ 8 (internal quotation marks and citation omitted). "We will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Id.* (internal quotation marks and citation omitted).

**{16}** We hold that Officer Giannini lacked reasonable suspicion to expand the traffic stop under the second *Duran* factor. Prior to Defendant leaving the vehicle, Officer Giannini's observations were limited to Defendant's driving and initial contact with Defendant. During the traffic stop, Defendant would not look at Officer Giannini, Defendant handed over the wrong documentation, and Defendant spoke very little. Officer Giannini did not detect an odor of alcohol and did not hear slurred speech until

after he asked Defendant to leave the vehicle. Officer Giannini could not conclusively determine if Defendant's eyes were watery or bloodshot. To the extent the City relies on Officer Giannini's testimony that Defendant handed him his proof of registration when he asked for proof of insurance, that he swerved while speeding, and the orientation of the windows on Defendant's truck, under the applicable standard of review, we indulge "[a]ll reasonable inferences in support of the district court's decision" and disregard "all inferences or evidence to the contrary." *See Johnson*, 2006-NMSC-049, ¶ 9 (alteration, internal quotation marks, and citation omitted). Therefore, under the totality of these circumstances the City presented to the court in support of reasonable suspicion to expand the traffic stop, we hold that Officer Giannini did not have reasonable suspicion to expand the traffic stop. *Compare State v. Neal*, 2007-NMSC-043, ¶ 29, 142 N.M. 176, 164 P.3d 57 (reasoning that the defendant's "fidgety and nervous demeanor" alone was not enough to create reasonable suspicion), *with State v. Walters*, 1997-NMCA-013, ¶ 26, 123 N.M. 88, 934 P.2d 282 (stating that detecting the odor of alcohol gives the officer reasonable suspicion to investigate further), *and State v. Candace S.*, 2012-NMCA-030, ¶ 28, 274 P.3d 744 (holding that the officer had reasonable suspicion to administer field sobriety tests because he observed erratic driving, smelled alcohol on the defendant's person, and saw her sway as she walked to her car).

## CONCLUSION

**{17}** We hold that there was substantial evidence to support the district court's findings and that Officer Giannini lacked reasonable suspicion to expand the traffic stop. Accordingly, we affirm the district court's order.

**{18}  IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**