This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: October 31, 2024**

**No. S-1-SC-39752**

**STATE OF NEW MEXICO,**

     Plaintiff-Petitioner,

v.

**MARCUS COLEMAN,**

     Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Robert Aragon, District Judge**

Raul Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
Walter Hart, Assistant Attorney General
Santa Fe, NM

for Petitioner

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

for Respondent

### DISPOSITIONAL ORDER OF REVERSAL

**PER CURIAM.**

**{1}** This appeal came before the Court upon the State's petition for writ of certiorari to review the Court of Appeals memorandum opinion in the matter of *State v. Coleman*, A-1-CA-40166, mem. op. ¶ 12 (N.M. Ct. App. Jan. 4, 2023) (nonprecedential).

**{2}**     The Court has reviewed the briefs of the parties, and is otherwise fully informed of the issues and applicable law.

**{3}**     The Court has chosen to exercise its discretion under Rule 12-405(B) NMRA to dispose of this case by nonprecedential dispositional order.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:**

**{4}**     The only question before this Court on the State's appeal is whether Deputy Salazar had reasonable suspicion under Article II, Section 10 of the New Mexico Constitution to expand his investigation beyond his initial traffic stop of Defendant Marcus Coleman to inquire whether Defendant was in possession of drugs. This is a legal question that we review de novo. *State v. Vasquez-Salas*, 2023-NMSC-023, ¶ 9, 538 P.3d 40.

**{5}**     The Court of Appeals affirmed the district court's suppression of the drug evidence resulting from the stop, concluding that "the officer lacked reasonable suspicion to question Defendant about his travel plans and history." *Coleman*, A-1-CA-40166, mem. op. ¶ 6. The Court of Appeals reasoned "that the officer's articulated suspicions for expanding the scope of the traffic stop were formed based in large part on Defendant's answers to the officer's questions about travel," but "the officer was required to have reasonable suspicion *prior to* asking Defendant about the purpose of his trip" and other travel-related questions. *Id.* ¶ 9.

**{6}**     "Article II, Section 10 requires that all questions asked during the investigation of a traffic stop be reasonably related to the initial reason for the stop. Unrelated questions are permissible when supported by independent reasonable suspicion, for reasons of officer safety, or if the interaction has developed into a consensual encounter." *State v. Leyva*, 2011-NMSC-009, ¶ 55, 149 N.M. 435, 250 P.3d 861.

**{7}**     The parties agree that Deputy Salazar expanded the scope of the traffic stop when he began to ask Defendant questions about his travel to and from California. *See Coleman*, A-1-CA-40166, mem. op. ¶ 2. Therefore, under Article II, Section 10, Deputy Salazar's expansion of the stop must be supported by independent reasonable suspicion.

**{8}**     "Reasonable suspicion exists when the officer becomes aware of specific articulable facts that, judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Vasquez-Salas*, 2023-NMSC-023, ¶ 10 (internal quotation marks and citation omitted). "In analyzing whether an officer has reasonable suspicion, the trial court must look at the totality of the circumstances, and in doing so it may consider the officer's experience and specialized training to make inferences and deductions from the cumulative information available to the officer." *State v. Martinez*, 2018-NMSC-007, ¶ 10, 410 P.3d 186 (internal quotation marks and citation omitted).

**{9}** We conclude that, as a matter of law, reasonable suspicion supported Deputy Salazar's expansion of the stop. Articulable facts existed that would lead a reasonable officer to believe that criminal activity had occurred or was occurring. The specific articulable facts available to Deputy Salazar at the time that he expanded the stop were (1) the smell of marijuana emitting from the rental vehicle and then from Defendant's person; (2) the rental agreement which indicated that the vehicle had been rented by the passenger in California the day before and was to be returned to Maryland in two days; and (3) that the passenger volunteered information about being a veteran and that they had been visiting veteran friends in California.

**{10}** In fact, the smell of marijuana alone was likely a sufficient basis for Deputy Salazar to form a reasonable suspicion of criminal activity, contrary to the Court of Appeals' analysis, *Coleman*, A-1-CA-40166, mem. op. ¶ 6. *See State v. Candelaria*, 2011-NMCA-001, ¶ 21, 149 N.M. 125, 245 P.3d 69 (holding that, following a routine traffic stop, the officer had reasonable suspicion to expand the scope of the stop because he smelled marijuana); *State v. Randy J.*, 2011-NMCA-105, ¶ 34, 150 N.M. 683, 265 P.3d 734 (same); *State v. Garcia-Ponce*, A-1-CA-35369, mem. op. ¶ 10 (N.M. Ct. App. Feb. 21, 2017) (nonprecedential) (same); *cf. State v. Capps*, 1982-NMSC-009, ¶ 12, 97 N.M. 453, 641 P.2d 484 ("The smell of marijuana alone can satisfy the probable cause requirement for a warrantless search.").[1] Nevertheless, the smell of marijuana was not the only fact known to Deputy Salazar at the time that he expanded the stop. Reviewing the totality of the circumstances and considering the Deputy's testimony about his experience and specialized training in interdiction and narcotics recognition, each of the facts available to Deputy Salazar before he questioned Defendant about his travel were sufficient to establish reasonable suspicion of criminal activity.

**{11}** We agree with the Court of Appeals and Defendant's contention that, at the suppression hearing, Deputy Salazar should not have relied on facts discovered after the expansion of the stop to "justify expanding the scope of the detention to ask the questions in the first place." *Coleman*, A-1-CA-40166, mem. op. ¶¶ 9-11; *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 ("Reasonable suspicion must exist at the inception of the seizure" and "[t]he officer cannot rely on facts which arise as a result of the encounter." (citations omitted)). But our *de novo* legal determination of whether reasonable suspicion existed does not turn on the quality of the arresting officer's testimony at the suppression hearing. *See State v. Duran*, 2005-NMSC-034, ¶ 40, 138 N.M. 414, 120 P.3d 836, *overruled on other grounds by Leyva*, 2011-NMSC-009, ¶¶ 2-3 (sharing the Court of Appeals' concern that the officer's testimony could have been more specific in its explanation of how the officer's training and experience supported his suspicions, but nonetheless concluding that the officer's flawed testimony

---

[1]The stop occurred on April 16, 2021 and the Cannabis Regulation Act, which legalized recreational marijuana use, went into effect on June 29, 2021. NMSA 1978, §§ 26-2C-1 to -42 (2021, as amended through 2024). Had the traffic stop occurred after the Act's effective date, there may have been a question about whether Deputy Salazar had reasonable suspicion to expand the scope of the stop because the Act specifies that "the odor of cannabis" alone does not constitute "reasonable articulable suspicion of a crime and is not a basis to stop, detain, or search a person," unless the officer is investigating a possible DUI. NMSA 1978, § 26-2C-25(C)(1), (D). The Act does not apply here.

sufficiently articulated the facts that gave him reasonable suspicion to expand the scope of the stop). Instead, our inquiry is an objective one: we review whether there existed "objectively reasonable indications of criminal activity," considering the "specific articulable facts" that were available to the officer at the time. *Leyva*, 2011-NMSC-009, ¶ 23; *see also Vasquez-Salas*, 2023-NMSC-023, ¶ 10. We do not consider the facts that became available to Deputy Salazar after he expanded the scope of the stop. *See Jason L.*, 2000-NMSC-018, ¶ 20. While not perfect, Deputy Salazar's testimony sufficiently articulated the facts that gave him reasonable suspicion to expand the scope of the stop—the smell of marijuana, the passenger's unsolicited comments, and the rental agreement.

**{12}** NOW, THEREFORE, IT IS ORDERED that the memorandum opinion of the Court of Appeals is hereby reversed.

**{13}** IT IS FURTHER ORDERED that this case is remanded to the district court without prejudice to the remaining arguments in Defendant's suppression motion.

**{14} IT IS SO ORDERED.**

**DAVID K. THOMSON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice**